Drake, Ch. J.,
dissenting:
This suit is for the recovery of damages for an alleged breach of a contract by the defendants, through their officers, in not furnishing to the claimant, but giving to another, certain transportation of military stores and supplies, which he claims it was his right under the contract to have had given to him; and the amount claimed is the difference between the price stipulated to be paid for the service and what it would have cost the claimant to perform the service, if he had been called upon by the Government to do so. It belongs, therefore, to the class of speculative suits, of which I have observed several in this court; a kind of case which, I confess, does not at any time engage my most favorable regard.
The decision of the case turns upon the construction of three words in the contract, namely, “ posts, depots, and stations.” If the construction given to those, words by the majority of the court be correct, the claimant is entitled to a recovery; otherwise not. It is my misfortune not to concur in that construction, for reasons which I will now proceed to state.
I agree with the majority in regard to the region or district covered by the contract in question; which, by general boundaries, may be stated as lying between the fortieth and forty-fourth degrees of north latitude, and the Missouri Eiver and the one hundred and fourteenth degree of longitude west of Greenwich. Within that region or district the claimant was bound to transport stores and supplies for the Government, from and to the points named in the contract; and it is not alleged that from any point so named any transportation was given to another; and therefore no damages are demanded on that account.
*350 The claim grows out of article'2 of the contract, which is in the following words:
“ Article 2. That the said Alexander Caldwell agrees and binds himself, his heirs, his executors, and administrators, to transport under this agreement, from the posts, depots, or stations named in article 1, or from or to 'any other posts, depots, or stations that may be established within the district named in said article, any number of pounds of military stores and supplies, from and between one hundred thousand pounds and ten millions of pounds in the aggregate.”
The claim rests, first, upon transportation which the Government caused to be performed by the Union Pacific Itailroad between Omaha, Nebraska, and three successive western termini of that road, namely^ Columbus, Lone Tree, and Kearney Station; and, secondly, upon wagon transportation from those termini westward, which the Government furnished by contract to one Herman Kountze, and which the claimant contends should have been furnished to himself.
. On the first of those grounds, I can see no possible right of action in the claimant; for Omaha was not a jioint named in the contract, nor was it established as a post, depot, or station of any kind, military or other, after the formation of the contract. On the contrary, it was at the date of the contract the military headquarters of the Department of the Platte, and therefore a military post; and that it was not named in the contract as a point from or to which the claimant was to transport stores or supplies is simply conclusive against his obligation to receive any there, or his right to demand transportation from that point.
If anything were wanting to make it more so, it is found in the fact that, at the date of the contract, the Union Pacific Railroad was in operation from Omaha westwardly, about sixty miles, and soon thereafter was put in operation, successively, to Columbus, Lone Tree, and Kearney Station; distant, re-. spectiveiy, from Omaha, ninety-two, one hundred and thirty-two, and one hundred and ninety-one miles. To me it is simply inconceivable that any officer of the Quartermaster’s Department of the United States Army would contract for wagon transportation alongside of a railroad; particularly with a stipulation, such as this contract contains, that ten trains per hundred miles for mule-trains, and fourteen days per hundred miles for ox-trains, *351 should be deemed sufficient speed; thus going no farther in a day than a railroad train would go in thirty to forty minutes. The absurdity of mulcting the' Government in damages upon the assumption that this contract authorized wagon transportation alongside of the Union Pacific Eailroad was so plain, that, though damages are claimed in the petition on account of the transportation of stores and supplies by railroad from Omaha to Columbus, that claim was not specified in the brief of claimant’s counsel; an omission which I do not consider cured by any oral claim made by the counsel who argued the case. This omission of that item of claim from the brief is the final and incontrovertible evidence that that part of the claim was intended to be abandoned here; for Rule XNX of this court declares that “ all items of claim not specified in the brief shall he considered as waived.” When, therefore, the able counsel who prepared the brief in this case “ specified” therein, in exact terms, the “ item s of claim ” on account of tran sportation from Columbus, Lone Tree, and Kearney Station, and did not specify any item of claim on account of transportation from Omaha, we are required by our own rule to consider that omitted item as “ waived ” and wholly withdrawn from the case.
It is in connection with the other ground of the claim that the construction of the words posts, depots, and stations becomes decisive of the case. I concur in the ruling of the majority, under the authority of the Supreme Court in United States v. Speed, (8 Wallace, 77,) that the obligation imposed upon the claimant to transport stores and supplies from and to certain points imposed a correlative obligation on the Government to deliver to him for transportation all the stores and supplies, not exceeding ten millions of pounds in the aggregate, which, during the period specified in the contract, were required to be transported by wagons from and to those points, except such as the Government might see fit to carry by its own means of transportation, the right to use which was expressly reserved in article 11 of the contract.
The question then is, whether the Government violated that obligation by delivering, as it did, to Kouutze, at Columbus, Lone Tree, and Kearney Station, stores and supplies to be transported by wagons to forts or military posts situated in the region or district covered by this contract.
As neither Columbus, Lone Tree, nor Kearney Station is *352 named in tbe contract, such violation is not chargeable, unless those places are included in the words “ any other posts, depots, or stations that may be established within the district named in said article 1.” If so included, the claimant has a good cause of action; otherwise, not.
Without controversy, neither of those places was, in any sense, at any time, a military post, depot, or station ; but each of them, as reached by the Union Pacific Railroad in the progress of its construction westwardly, became a railroad depot or station, from which stores and supplies were delivered by the Government to Kountze for transportation by wagons to military posts “ within the district named in said article 1.” Was this a violation of claimant’s contract? Let ns see.
It will be observed that in article 2 the words “posts, depots, .or stations” occur twice in immediate connection. The claimant there binds himself “ to transport '* * * from the posts, depots, or stations named in article 1, or from and to any other posts, depots, or'stations that may be established within the district named in said article * * military stores and supplies.”
Every recognized rule of interpretation of written instruments requires that the words “ posts, depots, or stations” should be considered as used in the same sense in both places. It is a violent distortion to give them one meaning in one line and a different meaning in the next line, when there is no word indicating an intention to enlarge, contract, or in any way change the meaning. When, therefore, we ascertain what kind of posts, depots, or stations was meant in article 1, we know what kind was meant in article 2.
That those named in article 1 were simply and only military posts, depots, or stations of the Government, would seem to be incapable of dispute or doubt. Every point there named is a fort; and when, in that connection, “ posts or depots ” to be thereafter established are mentioned, it could hardly be supposed possible that any other than military posts or depots of the Government could have been intended — particularly when, whether at the forts named, or at the posts or depots to be thereafter established, the only subject of transportation by the claimant, under the contract, was military stores and supplies to be delivered to him, and received from him, by officers or agents of the Quartermaster’s Department of the Army.
*353 And furthermore: By whom, or by what authority, were those “other posts, depots, or stations” to be established? Manifestly, as the posts, depots, and stations named in the contract had been established by the United States, so it could only have been intended to refer to others which the United States might thereafter establish, and from and to which transportation of military stores and supplies would be necessary. It would seem quite impossible that either party to the contract could have intended to base future obligations, as between themselves, upon what might thereafter be done by others in the way of establishing, within the district in question, what those others, or people generally, might choose to call a post, a depot, or a station. Neither officers of the Government nor contractors could, without plain words to that effect, be held to have designed that the acts of outside parties, over whom neither could exert any control, should come to form a part of a contract with which those parties had no connection, and of which, most probably, they would have no knowledge.
The views I have thus expressed lead me to the conclusion that the claimant’s case is singularly destitute of merit, and ought to be dismissed. But, were it otherwise, I could not concur in the amount awarded, which is the entire difference between the cost of rendering the service (if the claimant had been called upon to render it) and what he would have been entitled, by the terms of the contract, to receive for the service. In Speed’s Case (2 C. Cls. R., 429, and 8 Wallace, 77) this court, and afterward the Supreme Court, laid down the rule of damages in such cases to be, “ the difference between the cost of doing the work and what the claimant was to receive for it, making reasonable deduction for the less time engaged, and for release fromtheeare, trouble, risk, and responsibility attending a full execution of the contract.” As no such deduction is made in this case, I could not concur in a judgment which disregards our own rule of damages, approved and affirmed by the appellate court.